# United States District Court
# District of Massachusetts

UNITED STATES OF AMERICA,

      v.                CRIMINAL NO. 2007-10390-RGS-01

JOHN T. FOLEY,
            Defendant.

## MEMORANDUM AND ORDER
## ON PETITION FOR REVOCATION OF
## CONDITIONS OF RELEASE AND
## DETENTION
## PURSUANT TO TITLE 18 U.S.C. § 3148(b)

COLLINGS, U.S.M.J.

The issue in this case is whether the defendant violated the Conditions of Release previously set by the Court by possessing and/or using cocaine. The statutory framework which the Court must apply is laid out in Title 18 U.S.C. § 3148 which provides in pertinent part:

> **(a) Available sanctions.**--A person who has been released under section 3142 of this title, and who has

violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court.

**(b) Revocation of release.**--The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer in the district in which such person's arrest was ordered for a proceeding in accordance with this section. To the extent practicable, a person charged with violating the condition of release that such person not commit a Federal, State, or local crime during the period of release, shall be brought before the judicial officer who ordered the release and whose order is alleged to have been violated. The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer–

**(1)** finds that there is–

**(A)** probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

**(B)** clear and convincing evidence that the person has violated any other condition of release; and

**(2)** finds that–

**(A)** based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

2

**(B)** the person is unlikely to abide by any condition or combination of conditions of release.

Because the possession of cocaine is a crime, the issue becomes whether there is probable cause to believe that the defendant possessed and used cocaine while on release (18 U.S.C. § 3148(b)(1)(A)) and if so, whether the defendant is likely to abide by any condition of release which required that he abstain from use or possession of a narcotic drug, such as cocaine (18 U.S.C. § 3148(b)(2)(B). The resolution of the issue depends on the Court's findings with respect to the reliability of the results obtained from a sweatpatch worn by the defendant. In this connection, the task is not unlike that faced by then Chief Judge Young in the case of *United States v. Alfonso,* 284 F. Supp.2d 193 (D. Mass., 2003).

In the instant case, the Court heard testimony offered by both the Government and the defense at hearings on June 19th and September 4th, 2008. The Court finds the following facts:

(1)   On November 30, 2007, the Court set Conditions of Release for the defendant and he was released.

(2)   On December 10, 2007, the defendant submitted a urine specimen

which proved positive for cocaine.

(3)     On December 11, 2007, the Court revoked the defendant's Conditions of Release and ordered that he be examined to determine whether he was an addict.

(4)     The Report dated January 9, 2008 concluded that the defendant was a cocaine abuser and recommended outpatient treatment.

(5)     The Report indicated that the defendant admitted to the examiner that he used cocaine steadily from April, 2007 until his arrest. He ingested the drug nasally.  He further stated that he used cocaine on December 8th and 9th and "...was 'surprised' when the cocaine showed up in his urine on December 10, 2007 because he reported 'I did not use that much so I did not think it would show up.'" (Report of Paul Doherty, M.A., LMHC dated 1/9/08 at p. 2).

(6)     On January 24, 2008, the Court again set Conditions of Release based on the recommendations in the Report but required intensive outpatient treatment.

(7)     On March 19, 2008, the Court issued a warrant for the defendant's arrest based on the fact that a sweatpatch worn from February 29th to March 7th, 2008 proved positive for cocaine.

(8)     On March 25, 2008, the Court, after hearing, again set Conditions of Release requiring the defendant to be drug-tested both by the use of the sweatpatch and by urine specimens.

(9)     From March 26, 2008 through June 11, 2008, the defendant was given urine tests on twenty occasions and all of the urine tests were negative for the presence of narcotic drugs.  None of the urine was retained.

4

(10)  From March 25, 2008 through April 30, 2008, five sweatpatches worn by the defendant were negative for the presence of narcotic drugs.

(11)  Three sweatpatches worn from April 30, 2008 to May 6, 2008, from May 21, 2008 to May 28, 2008 and from May 28, 2008 to June 4, 2008 proved positive for cocaine.

(12)  Two sweatpatches worn from May 6, 2008 to May 14, 2008 and from May 14, 2008 to May 21, 2008 were negative for the presence of a narcotic drug.

(13)  Based on the three positive sweatpatches referred to in (11), *supra,* the Court issued a warrant for the defendant's arrest on June 12, 2008.

(14)  The defendant was arrested on June 13, 2008 on the warrant and has been detained pending resolution of the question of whether the Conditions of Release will be revoked.

(15)  In applying and removing the sweatpatches referred to in (11), *supra,* the Pre-Trial Service Officer used all proper procedures; when the sweatpatches were removed, none of them had been or were compromised.

(16)  The cutoff for a urine test is 300 nanograms per milliliter; a test which registers less than that is deemed negative even though some cocaine metabolite might be in the urine.

(17)  The cutoff for a sweatpatch test is 10 nanograms per milliliter.

These facts lead to the testimony of the defendant's expert, Dr. Smith.

Even were one to accept Dr. Smith's testimony that a sweatpatch can register positive for cocaine as a result of the person being exposed to cocaine in the environment, the Court finds it more probable that contamination was not the cause of the defendant's positive sweatpatch results. Rather, it is more probable that the positive results were the result of the defendant purposely using cocaine, albeit not in high doses.

The Court bases this conclusion on a number of factors. First, it is telling that in December, the defendant told the examiner that he was surprised that his urine tested positive because he did not "use that much." The defendant evidently does not have to use that much cocaine in order to get whatever reaction he seeks from the drug and has become aware of just how much cocaine he can take and not excrete a urine which will prove positive for cocaine. He is unable to do that when the sweatpatch produce is used.

Second, if as posited by the defendant, his residence had a lot of cocaine residue from past use, it is unlikely that there would be seven sweatpatches that proved negative results for the presence of cocaine.

Third, the fact that there were three sweatpatches which produced positive results from April 30th to June 4th yields the conclusion that it is more

probable than not that the positive results were the result of knowing use. The Court would be less likely to come to this conclusion if only one sweatpatch produced a positive result.

Fourth, the Court cannot ignore the fact that the defendant was a regular cocaine user for eight months prior to his initial arrest. This lends support to the Court's finding that the positive results are the result of use rather than contamination or unknowing exposure to cocaine. Conversely, the probability would be far less if the person had not used drugs prior to arrest.

This analysis of probabilities is important because the standard is probable cause. *Alfonso,* 284 F. Supp.2d at 202.

Upon a review of the whole record, the Court finds that there is probable cause to believe that the defendant possessed and used cocaine while on release in violation of federal and state law and that the defendant, if released, is unlikely to abide by any condition which required that he refrain from such use.

Accordingly, pursuant to Title 18 U.S.C. § 3148(b), it is ORDERED that the conditions of release previously set be, and the same hereby are, REVOKED.

It is FURTHER ORDERED that the defendant be, and he hereby is,

DETAINED and that:

(1)  The defendant be, and he hereby is, committed to the custody of the Attorney General for confinement in a corrections facility;

(2)  The defendant be afforded reasonable opportunity for private consultation with his counsel; and

(3)  On Order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to an authorized Deputy U. S. Marshal for the purpose of any appearance in connection with a court proceeding.

Review of the within Detention Order may be had by the defendant filing a motion for revocation or amendment of the within Order pursuant to 18 U.S.C. § 3145(b).

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

October 29, 2008.