UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 07-10390-RGS

UNITED STATES OF AMERICA

v.

JOHN T. FOLEY

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION FOR RECONSIDERATION OF ORDER
UPHOLDING MAGISTRATE JUDGE'S DETENTION ORDER

February 24, 2009

STEARNS, D.J.

The findings of fact which led to defendant John Foley's detention are taken

verbatim from Magistrate Judge Collings' Memorandum and Order of October 29, 2008.

(1)    On November 30, 2007, the Court set Conditions of Release for the defendant and he was released.

(2)    On December 10, 2007, the defendant submitted a urine specimen which proved positive for cocaine.

(3)    On December 11, 2007, the Court revoked the defendant's Conditions of Release and ordered that he be examined to determine whether he was an addict.

(4)    The Report dated January 9, 2008 concluded that the defendant was a cocaine abuser and recommended outpatient treatment.

(5)    The Report indicated that the defendant admitted to the examiner that he used cocaine steadily from April, 2007 until his arrest.  He ingested the drug nasally.  He further stated that he used cocaine on December 8th and 9th and ". . . was 'surprised' when the cocaine showed up in his urine on December 10, 2007 because he reported 'I did not use that much so I did not think it would show up.'"  (Report of Paul Doherty, M.A., LMHC dated 1/9/08 at p. 2).

(6)    On January 24, 2008, the Court again set Conditions of Release based on the recommendations in the Report but required intensive outpatient treatment.

(7)     On March 19, 2008, the Court issued a warrant for the defendant's arrest based on the fact that a sweatpatch worn from February 29th to March 7th, 2008 proved positive for cocaine.

(8)     On March 25, 2008, the Court, after hearing, again set Conditions of Release requiring the defendant to be drug-tested both by the use of the sweatpatch and by urine specimens.

(9)     From March 26, 2008 through June 11, 2008, the defendant was given urine tests on twenty occasions and all of the urine tests were negative for the presence of narcotic drugs.  None of the urine was retained.

(10)    From March 25, 2008 through April 30, 2008, five sweatpatches worn by the defendant were negative for the presence of narcotic drugs.

(11)    Three sweatpatches worn from April 30, 2008 to May 6, 2008, from May 21, 2008 to May 28, 2008 and from May 28, 2008 to June 4, 2008 proved positive for cocaine.

(12)    Two sweatpatches worn from May 6, 2008 to May 14, 2008 and from May 14, 2008 to May 21, 2008 were negative for the presence of a narcotic drug.

(13)    Based on the three positive sweatpatches referred to in (11), *supra*, the Court issued a warrant for the defendant's arrest on June 12, 2008.

(14)    The defendant was arrested on June 13, 2008 on the warrant and has been detained pending resolution of the question of whether the Conditions of Release will be revoked.

(15)    In applying and removing the sweatpatches referred to in (11), *supra*, the Pre-Trial Service Officer used all proper procedures; when the sweatpatches were removed, none of them had been or were compromised.

(16)    The cutoff for a urine test is 300 nanograms per milliliter; a test which registers less than that is deemed negative even though some cocaine metabolite might be in the urine.

(17)    The cutoff for a sweatpatch test is 10 nanograms per milliliter.

## SUBSEQUENT HISTORY

On December 4, 2008, the court summarily denied Foley's "Motion for Revocation of Magistrate Judge's Detention Order and Incorporated Memorandum of Law" with the following notation.

> DENIED. The motion raises no argument or issue that was not fully aired before Magistrate Judge Collings.  I am fully satisfied with his conclusion

2

(after exhaustive hearings) that defendant had used cocaine in violation of his conditions of release.  That conclusion is amply supported by probable cause.

On December 24, 2008, Foley filed a motion seeking reconsideration.  Foley alleged two grounds of error in the court's denial of his original motion: (1) that the court had failed to give the matter de novo consideration; and (2) that the court had erred in denying the motion without an evidentiary hearing.  The court heard argument on Foley's contentions on January 22, 2009.

### RULINGS OF LAW

A preliminary issue involves the meaning of de novo review in the context of the Bail Reform Act, 18 U.S.C. § 3142, et seq.  Foley's position is that a request for de novo review requires the district court to "do-over" the hearing conducted by the Magistrate Judge.  The government's position is that the court may summarily affirm a detention order on a review of the findings of the Magistrate Judge, if it determines that those findings reasonably support detention.

There is a clear consensus among the Circuit Courts of Appeals that a district court's review of a Magistrate Judge's detention order is de novo.[1]  But, as one commentator has observed, "[t]he term 'de novo review' . . . has very different meanings among, and even within, the various circuits."  Matthew J. Hank, District Court Review of a Magistrate Judge's Pretrial Detention Order, 33 UWLA L. Rev. 157, 161  (2001). Most Courts of Appeals, however, have endorsed an approach that vests considerable

---

[1]See, e.g., United States v. Leon, 766 F.2d 77 (2d Cir. 1985); United States v. Delker, 757 F.2d 1390 (3d Cir. 1985), United Stats v. Maulf, 773 F.2d 1478 (8th Cir. 1985) (en banc).

discretion in the reviewing court. The leading First Circuit case addressing of the issue

in the context of the Bail Reform Act is illustrative.

> While it would be possible for us merely to set aside the release order and remand for a statement of the lower court's reasons, we believe that step to be unnecessary in this case. It appears from the hearing transcript, albeit only translucently, that the district court did not base its release order on new or different fact-finding. The court seems instead to have accepted the subsidiary facts as found by the magistrate, concluding only, for reasons not articulated, that a particular set of conditions never suggested to the magistrate could reasonably assure public safety. It is this decision that we must review, in conjunction with the facts as presented in the record and as found by the magistrate, and taking due cognizance of the district court's failure to state its reasons for disturbing the detention order. See O'Brien, 895 F.2d at 816 ("we shall give such deference as we think the care and consideration manifested by the magistrate and district court warrant"); Coleman, 777 F.2d at 892 (where district court does not set forth reasons supporting its conclusion that accused poses no danger upon release, appellate court must afford less than the usual "respectful consideration" to the district court's conclusion). Hence, appellate review can be satisfactorily accomplished on the existing record.

See United States v. Tortora, 922 F.2d 880, 883 (1st Cir. 1990).[2]

CONCLUSION

Consistent with the flexible standard endorsed in Tortora, I conclude that it is

appropriate to confine de novo review of a detention order to the record created by the

Magistrate Judge where his or her findings have clear support in the underlying record.[3]

That is the case here. In arguing that the court should reopen and redo the record, Foley

---

[2]Although Tortora arose in the context of the government's appeal of a release order, the Court drew no distinction between a review of a release order and the review of a detention order. See Tortora, 922 F.2d at 883.

[3]The court may also convene an evidentiary hearing, although there seems little reason to do so absent some new evidence that was unavailable to a defendant at the time of the original hearing.

makes three arguments.   First he criticizes the Magistrate Judge for giving greater credence to the government's expert witness on the reliability of the cocaine-use sweatpatch test than he did to his own competing expert.   Second, he disavows an earlier (December 10, 2007) admission that he was "surprised" at having failed a contemporary urine test because he had "not use[d] that much."[4]   Third, he maintains that a March 25, 2008 hair follicle test demonstrated that he had not used cocaine at or about the time of one of the positive sweatpatch tests.

None of these reasons, singly or collectively, warrant a further evidentiary hearing. As the Court of Appeals defers respectfully to the credibility determinations of a first-instance court, so it is appropriate for this court to defer to the credibility findings of the Magistrate Judge, particularly given the exhaustive testimony he heard over two full days from the expert witnesses.   Foley's sudden disavowal of his previous admission of post-arrest cocaine use I reject as inherently untrustworthy.[5]   And finally, the hair sampling test report offered by Foley is uncorroborated by a chain of custody verifying that sample of hair (or the person) tested was in fact Foley('s).   Nor is there any explanation of the testing protocols applied by the laboratory in reaching its conclusion.[6]

ORDER

---

[4] Foley's counsel stated at the January hearing that Foley had lied about using cocaine thinking that an admission would lead to his immediate release.

[5] Foley did not attempt to retract the earlier admission after the Magistrate Judge released him notwithstanding the confession.  The attempted retraction is of very recent vintage.

[6] The hair sample result in any event is of little meaning in light of the three positive sweatpatch tests and Foley's inculpatory statement.

For the foregoing reasons, the motion for reconsideration of the Magistrate Judge's detention order is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE